UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                            Plaintiff,<br><br>     v.<br><br>RONALD LYNN DUFLOTH,<br><br>                            Defendant. | Case No. 2:18-cr-0035-KJD-NJK<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE** |

Before the Court is Defendant's Motion for Compassionate Release (#40). The United States responded in opposition (#42) to which Defendant replied (#44).

I.      Factual and Procedural Background

In January 2018, Ronald Dufloth ("Dufloth") was behind on his rent. (#42, at 2). When his apartment manager inquired about the rent, Dufloth indicated that he would rob a bank and get the money. Id. Two days later, Dufloth entered a Wells Fargo Bank in Las Vegas, Nevada. Id. Dufloth waited for a specific teller to become available, approached her, and handed her a note that demanded, "Give me $3,000 in $100 bills and put it in an envelope." Id. Dufloth showed the teller a device that he brought with him for the robbery. Id. Dufloth indicated that the black device with a red button on it was a trigger for an explosive device, and he threatened to push it. Id. Frightened by the ordeal, the teller placed $536 in an envelope and gave it to Dufloth, who then left the bank. Id. The teller recognized Dufloth when he showed up because he had been in the bank a few weeks earlier, causing the teller to be fearful that he was stalking her. Id. In addition to this robbery, Dufloth has been convicted on multiple felony and misdemeanor charges, ranging from traffic and drug offenses, to second degree burglary and robbery with the use of a deadly weapon. Id. at 3. Each time, Dufloth served his sentence before returning to society and committing another crime. Id.

On June 12, 2018, Dufloth pleaded guilty to bank robbery. <u>Id.</u> This Court sentenced him to 46 months in prison, followed by a five-year term of supervised release. <u>Id.</u> Dufloth claims to have requested compassionate release from the warden of FCI Phoenix, the Bureau of Prisons ("BOP") facility in which he is incarcerated. (#44, at 2–3). His handwritten request to the warden did not warrant a response, and facility policy indicates that Dufloth is not entitled to a copy of his request. <u>Id.</u> After two requests to the warden Dufloth waited 30 days and filed this motion. <u>Id.</u> at 3.

II.     Legal Standard

The district court that imposed sentence on a criminal defendant has authority to modify the term of imprisonment under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018). That statute provides, in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that […]extraordinary and compelling reasons warrant such a reduction […] and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. §§ 3582(c)(1)(A), 3582(c)(1)(A)(i).

If the defendant has exhausted administrative remedies, the analysis is twofold. First, the Court must consider the same factors applicable at the original sentencing, enumerated in 18 U.S.C. § 3553(a), to the extent they remain applicable at the time the motion is brought. 18 U.S.C. § 3582(c)(1)(A). Second, the Court must find "extraordinary and compelling reasons" to release a defendant from Bureau of Prisons ("BOP") custody in a policy statement. <u>Id.</u>

III.    Analysis

Dufloth argues that he is no longer a danger to the public due to his age and health status.

However, Dufloth was not a young man when he committed the crime for which he is currently incarcerated. The Court fails to see why Dufloth's current age (67) makes him any less of a danger to the public when he robbed a bank, while threatening to activate an explosive device, at the age of 64. Dufloth's argument that the weapon he threatened to use was not real and that he only ended up stealing $536 are unpersuasive. Dufloth's intent with the device with the button was to inflict fear on the teller, forcing her to give him the money. While Dufloth might have only ended up with $536, if he had it his way, the teller would have put $3,000 in the envelope. The Court does not see why using a prop weapon to instill fear and getting less money than requested makes Dufloth less of a danger to the public. Dufloth's story is not one of a mistake that led to incarceration. History shows that Dufloth has repeatedly attempted to cash false checks and steal. None of his previous sentences made any impact on Dufloth, as he continued to try to take what was not his. As such, it is necessary for Dufloth to complete his current sentence in another attempt at rehabilitation.

Additionally, Dufloth cannot show extraordinary and compelling reasons for the relief requested. Dufloth's medical records do not show treatment for any underlying conditions. His pre-diabetic state could place him at greater risk of severe illness due to COVID-19. One study hypothesizes that pre-diabetes causes more severe COVID-19 reactions, and that if the hypothesis is correct, "then people with pre-diabetes are at most risk not only for the onset of type 2 diabetes but for severe illness from COVID-19." Aubrey Mbulelo Sosibo & Andile Khathi, Pre-diabetes and COVID-19, Could We be Missing the Silent Killer? EXPERIMENTAL BIOLOGY AND MEDICINE (Nov. 20, 2020), https://journals.sagepub.com/doi/full/10.1177/1535370220973451.

Hepatitis C, while it is an underlying condition, also does not put him at higher risk. The Centers for Disease Control and Prevention ("CDC") has "no information about whether people with hepatitis B or C are at increased risk of getting COVID-19 or having severe COVID-19." WHAT TO KNOW ABOUT LIVER DISEASE AND COVID-19, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/liver-disease.html (last visited Jan. 22, 2021).  Another doctor states that "[i]f somebody has hepatitis C with end-stage

liver disease, they *could* be more at risk of having a bad reaction to" COVID-19, but if somebody "has good liver function and is asymptomatic for hepatitis C, then at this point we don't know that there should be anything different from those who do not have hepatitis C infection." WHAT PEOPLE LIVING WITH HEPATITIS C NEED TO KNOW ABOUT COVID-19, https://newsnetwork.mayoclinic.org/discussion/what-people-living-with-hepatitis-c-need-to-know-about-covid-19/ (last visited Jan. 22, 2021). There is no indication that Dufloth has end-stage liver disease, which could possibly put him at additional risk of a severe reaction to COVID-19. While Dufloth's age puts him at higher risk, it does not outweigh the potential danger to the public if he were to be released. As such, Dufloth cannot show extraordinary and compelling reasons to justify release.

Having considered the relevant factors, the Court finds that Dufloth cannot show extraordinary and compelling reasons to justify his release or that he is not a danger to the public. Therefore, his motion for compassionate release is denied.

IV.     Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendant's Motion for Compassionate Release (#40) is **DENIED**.

Dated this 25th day of January, 2021.

                                              Kent J. Dawson
                                              United States District Judge